# RUBINSTEIN & COROZZO, LLP
#### COUNSELORS AT LAW

260 MADISON AVENUE, 22ND FLOOR
NEW YORK, N.Y. 10016
TELEPHONE (212) 545-8777; FAX (917) 722-8206
INFO@RUBCORLAW.COM

RONALD RUBINSTEIN
JOSEPH R. COROZZO

ANGELA D. LIPSMAN (NY; NJ)

Of Counsel:
MARSHALL A. MINTZ
LAURA OPPENHEIM

August 2, 2019

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: United States v. Esposito et al.
   <u>18 CR 14 (VM)</u>

Dear Judge Marrero,

  I represent Frank Cognetta ("Cognetta"). I write this letter in opposition to the Motion to Quash filed by non-party Wine, Liquor & Distillery Workers Union Local 1-D of the United Food and Commercial Workers ("the Union"), ECF #s 245, 246. As discussed *infra,* Mr. Cognetta asks that the Union's Motion to Quash be denied. Further, Mr. Cognetta cross-moves that the Court so-order the subpoena *duces tecum* at issue or, in the alternative, permit the defense to submit modified subpoena(s) to be so-ordered.

## BACKGROUND

  Mr. Cognetta worked for the Union beginning when he was in high school until 1996, and again from August 2003 up until his Voluntary Resignation in January 2018, following his arrest in the case at bar. Presentence Report ("PSR") ¶ 106. He became a trustee of the Union's pension system in 2010 and later became the Union's secretary treasurer in October 2013. <u>Id.</u>

  Mr. Cognetta is currently scheduled to be sentenced on September 6, 2019 for his participation in a Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). The underlying conduct involved, *inter alia,* accepting kickbacks beginning in 2014 in exchange for his "appointment and retention of a financial adviser as an insurance broker for a union medical insurance plan." Plea Agreement, p. 3 (ECF # 246, p. 41).

  Mr. Cognetta pled guilty on March 11, 2019. He allocuted in part, "Between 2001 and 2017 in the Southern District of New York… I, an investment adviser and others, constituting an association in fact, agreed to participate in the affairs of a racketeering enterprise… The adviser and I arranged [to] enroll new union members into the union health plan. In order to receive this

1

RUBINSTEIN & COROZZO, LLP

insurance coverage the participants paid a fee to the adviser and myself which is not disclosed to the union…" Plea Transcript, p. 12, Lines 5 – 16.

As pertinent to the Union's motion, the offense included accepting kickbacks through the enrollment of individuals in the Union's Major Medical Plan who did not work in the Wine, Liquor & Distillery industry (hereafter "non-liquor workers"). However, while the Motion to Quash refers to these non-liquor workers as "non-unionized individuals," these individuals were enrolled in the Union. As per defense counsel's Letter to U.S. Probation Officer Tandis Farrence dated May 31, 2019, objecting to the PSR, the so-called "non-unionized individuals" "executed Collective Bargaining Agreements which were reviewed and approved by the Union President." Letter to Officer Farrence (attached), p. 2.

Omitted from the Motion to Quash is the fact that the Union, in an effort to enlarge its membership, enrolled non-liquor workers in the Union. The Union signed these individuals up in order to "obtain more affordable insurance" for the Union, PSR ¶ 61, making the plan more profitable to the Union, and to generate revenue. The enrollment of the non-liquor workers was approved by the Union President in the aforementioned contracts—which constitutes one subset of the documents demanded by the subpoena at issue.

It was also discussed at Board Meetings, which Mr. Cognetta, as a member of the Board, attended. Mr. Cognetta thus has personal knowledge that the minutes of those meetings will show that the Board was not only aware that non-liquor workers were enrolled in the Union, but also lauded Mr. Cognetta for having thus increased the Union's membership. (The minutes of the meetings are a second subset of the documents demanded by the subpoena.) Additionally, the Board of Trustees meeting minutes will show that Mr. Cognetta was praised for his handling of the funds and would also reflect how the funds' gains and/or losses varied over the years.

Also omitted from the Motion to Quash is that the Union had been enrolling non-liquor workers for years—even before Mr. Cognetta's involvement began in 2014, which is why the subpoena at issue also calls for documents (Form 5500 forms and contracts) predating 2014.

The defense anticipates that the Government will be requesting a sentence of between 33 – 41 months in prison, as per the U.S. Sentencing Guidelines. The Probation Office has recommended a non-Guidelines sentence of 24 months. PSR p. 28. The defense intends to move for a downward departure pursuant to U.S.S.G. § 5H1.6, as permitted by the Plea Agreement and, in the alternative, will be seeking a below-Guidelines sentence pursuant to 18 U.S.C. § 3553(a).

The Union submitted documentation to the Government on April 26, 2019 to facilitate the calculation of restitution. Motion to Quash p. 3. The report the Union submitted to the Government indicates that the Union has calculated the loss to the Union's Major Medical Plan to be $832,674. Exhibit 4 to Motion to Quash; PSR ¶ 59. The Union explained that this figure was calculated as the difference between the amount of benefits paid by the Union to "enrolled non-union individuals" in the Major Medical Plan, and the amount of contributions received from said individuals. Motion to Quash, p. 3. The Government, in turn, supplied the report to defense counsel on June 12, 2019. Exhibit 6 to Motion to Quash.

RUBINSTEIN & COROZZO, LLP

On July 22, 2019, defense counsel served the Union with the subpoena *duces tecum* ("subpoena") at issue. Exhibit 7 to Motion to Quash. The subpoena demands three categories of documents: (1) Form 5500 Annual Return/Reports for the Union's Major Medical Plan for the years 2000 – present; (2) minutes from Board of Trustees meetings for the years 2014 – present; and (3) all contracts between the Union and the non-union individuals enumerated in the report the Union provided to the Government on April 26, 2019.

On July 23, 2019, the Union informed defense counsel of certain concerns regarding the subpoena. On July 24, 2019, defense counsel called the attorney for the Union to discuss these concerns. Later that day, the Union's attorney memorialized via e-mail that he and defense counsel had discussed the possibility of modifying the subpoena in order to avoid litigation over the issue. July 24, 2019 4:10 p.m. E-mail to Defense Counsel (attached). However, on July 26, 2019, the Union, through its attorney, alerted defense counsel that, in fact, the Union would move to quash the subpoena if it was not withdrawn altogether. Whereupon, defense counsel responded that we would not be withdrawing the subpoena. The Union's Motion to Quash followed.

## DISCUSSION

I. Rule 17's Applicability to Subpoenas Issued Post-Plea.

Contrary to the Union's assertion, courts within this Circuit have recognized that Rule 17(c) also applies to subpoenas issued after a defendant has been found (or pled) guilty. This is stated explicitly in one of the very cases the Union cites for the opposite proposition—***United States v. Nix***, 251 F. Supp. 3d 555 (W.D.N.Y. 2017). "First, post-trial use of subpoenas pursuant to Fed. R. Crim. P. 17(c) has been recognized as permissible. ***United States v. Leaver***, 358 F. Supp. 2d 273, 276 (S.D.N.Y. 2005) ('A Rule 17(c) subpoena may also properly be used to gather documents for a pretrial or post-trial hearing.'); *see* Wright & Miller § 272 ('Rule 17 is not limited to subpoenas for the trial. A subpoena may be issued… for post-trial motions.' (citing ***United States v. Winner***, 641 F.2d 825, 833 (10th Cir. 1981))." *Nix*, 251 F. Supp. 3d at 561. See also ***United States v. Cheruvu***, 2018 U.S. Dist. LEXIS 197922, *5 (W.D.N.Y. Nov. 20, 2018) ("the Court concludes that Rule 17 subpoenas may be brought posttrial…").

It would fly in the face of judicial economy to require litigation over every post-plea, pre-sentencing subpoena. Further, while a defendant does give up certain rights by pleading guilty, including the right of Confrontation, a defendant continues to maintain other constitutional rights, including the right to Due Process and the right to Effective Assistance of Counsel. Certainly, it is indisputable that a defendant retains the right to present evidence on his or her behalf at sentencing. See ***United States v. Fatico***, 603 F.2d 1053 (2d Cir. 1979). Due Process continues to apply as a sentencing hearing determines the extent to which a defendant will be deprived of his liberty.

Additionally, a defense attorney has an obligation to zealously represent his or her client at every phase of the criminal case, including, if not especially, at sentencing. Nearly 99 percent of all criminal cases in the Southern and Eastern Districts of New York end in convictions, and, of these, "approximately 95 percent of convictions can be attributed to guilty pleas," Josh Dubin,

3

"Assumption of Guilt: A Study," New York Law Journal (May 14, 2018), page 4. Given this stark reality, the fact is that preparing for and advocating at sentencing constitutes a major part of defense counsel's role in criminal proceedings. Defendants are already at a disadvantage in not having the investigative resources enjoyed by the Government. There is no need to figuratively tie defense counsel's hands by requiring defense counsel to file a motion every time a defendant wishes to subpoena documents or witnesses for his or her sentencing. (Though, of course, this would be a reciprocal obligation that would also require the U.S. Attorney's Office to seek the Court's permission for any and all post-conviction subpoenas.)

Thus, the Union's premise that every post-conviction subpoena requires judicial review is flawed. However, that issue is moot here as the Union, through the Motion to Quash, has brought this subpoena before the Court for review.

Regardless, Rule 17(c) applies to the Court's analysis of the subpoena. *Nix* acknowledged the case of ***United States v. Martin***, 141 F.3d 1152 (2d Cir. February 10, 1998) (Table), which was also cited by the Union in the Motion to Quash. However, the District Court went on to say, "In any event, in exercising any discretion with respect to the post-verdict use of subpoenas, this Court would rely on the parameters of Rule 17(c)." *Nix*, 251 F. Supp. 3d at 562.

Having concluded that Rule 17(c) guides any analysis of a "post-trial" subpoena, *Nix* then went on to apply the test from ***United States v. Nixon***, 418 U.S. 683, 699 (1974).

We continue to maintain, as we did in opposing the Government's Motion to Quash a prior subpoena, that *Nixon* was not meant to apply to Rule 17(c) subpoenas to third parties. ***United States v. Stein***, 488 F. Supp. 2d 350, 365 (S.D.N.Y. 2007); ***United States v. Nachamie***, 91 F. Supp. 2d 552, 563 (S.D.N.Y. 2000); ***United States v. Soliman***, 2009 U.S. Dist. LEXIS 45194 (W.D.N.Y. May 29, 2009), ***United States v. Rajaratnam***, 753 F. Supp. 2d 317, footnote 1 (S.D.N.Y. 2011).

However, given this Court's decision to apply *Nixon* to such subpoenas until such time as the Second Circuit or Supreme Court may rule otherwise, ***United States v. Yudong Zhu***, 2014 U.S. Dist. LEXIS 154034, *4 (S.D.N.Y. October 14, 2014), we will proceed to explain why the subpoena at issue satisfies the various requirements of the *Nixon* test.

II. The Documents Are Both Admissible and Relevant to Defendant's Sentencing.

Under the first prong of *Nixon,* the documents to be subpoenaed must be "evidentiary and relevant." *Nix*, 251 F. Supp. 3d at 563 (quoting *Nixon*, 418 U.S. at 699).

Here, the documents are admissible and the Union does not contend otherwise. The Federal Rules of Evidence do not apply to sentencing hearings. U.S.S.G. § 6A1.3(a) explicitly states that "In resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." Thus evidence that might have been inadmissible at a trial, such as hearsay, may nevertheless be considered at sentencing. ***United States v. Scott***,

RUBINSTEIN & COROZZO, LLP

614 Fed. Appx. 567, 569 (2d Cir. 2015); *United States v. Melendez,* 2005 U.S. Dist. LEXIS 12038, Footnote 3 (S.D.N.Y. 2005).

   We turn next to relevance. Under the United States Code, there are essentially no limits on what a court may find relevant to sentencing. "*No limitation* shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence," 18 U.S.C. § 3661 (emphasis added), quoted at *United States v. Salim*, 287 F. Supp. 2d 250, Footnote 52 (S.D.N.Y. 2003). See also *Hilton v. Brown*, 2010 U.S. Dist. LEXIS 142326, *55 (S.D.N.Y. February 24, 2010) ("as under the post-Booker federal sentencing scheme, after considering the specified sentencing factors, a judge is ultimately free to base her decision on anything she considers relevant"); Id. at Footnote 37 ("See *Rita [v. United States]*, 551 U.S. [338] at 364 [2007] (noting that, since the federal sentencing guidelines are no longer mandatory, the range of relevant considerations is 'significantly broadened' beyond the specified sentencing factors)").

   In short, just about anything may be relevant to the Court's analysis under 18 U.S.C. § 3553(a). *United States v. Broxmeyer*, 699 F.3d 265, 287 (2d Cir. 2012) (citing *United States v. Wernick*, 2012 U.S. App. LEXIS 16506, 2012 WL 3194244, at *8). That the Union attacks the documents targeted by the subpoena as irrelevant to the sentencing evinces how unfamiliar the Union is with federal sentencings.

   The Union claims the documents are irrelevant to the sentencing, relying upon the mistaken assumption that the documents could only be relevant to the issue of restitution, which, the Union contends, has been conclusively resolved.

   In the first instance, the amount of restitution has <u>not</u> been conclusively resolved. The Plea Agreement leaves the amount of restitution to be determined, as does the PSR. PSR p. 28. Wherefore, the defense needs to review the records in question, i.e. the Annual Return/Reports for the Major Medical Plan.

   Secondly, we also subpoenaed the documents in order to provide the Court with a full, complete, and accurate picture of the nature and circumstances of the offense. 18 U.S.C. § 3553(a)(1). Mr. Cognetta's offense involved knowingly receiving kickbacks, behind the Union's back, for the enrollment of non-liquor workers into the Union's medical plan. Mr. Cognetta has acknowledged that his conduct was wrong and unlawful and we do not intend to minimize the severity of his offense.

   At the same time, however, in order to advance the analysis under § 3553(a), we wish to provide the Court with context for Mr. Cognetta's offense—context which, judging by the PSR and our expectations of the Government's forthcoming sentencing submission, will otherwise not be presented to the Court.

   Mr. Cognetta's offense did not occur in a vacuum. As discussed *supra*, the Union sought to increase its membership in order to generate revenue and to get a better deal on the Union's insurance. The Union was content to do so by enrolling non-liquor workers. Thus, the President

of the Union reviewed and signed Collective Bargaining Agreements with the non-liquor individuals, accepting them into the Union. Mr. Cognetta knows this from his time employed at the Union. These contracts are one of the three sets of documents demanded by the subpoena. Though we did not limit this request by date, the subpoena specifically requests contracts with individuals who were listed in the report provided by the Union to the Government. And, as stated above, the enrollment of non-liquor workers in the Union predated Mr. Cognetta's involvement.

Additionally, during his time as a member of the Board, Mr. Cognetta attended Board meetings at which other members of the Board commended him for both his handling of the Union's funds (i.e. the Major Medical Plan) and for his role in increasing membership in the Union. It is for this reason, as well as the fact that the minutes will indicate how the funds' gains and/or losses varied over the years, that the subpoena demands the minutes from the Board meetings for the years 2014 to the present.

The other set of documents called for by the subpoena are the Annual Return/Reports for the Union's Major Medical Plan for the years 2000 – present. These documents are subpoenaed to corroborate Mr. Cognetta's assertion, recorded in PSR ¶ 61, as follows: "The defendant reported that he does not want to diminish his role in the offense, but the medical and investment plans that were introduced to the union were profitable, sound, low-cost plans, and were beneficial to the union members." Mr. Cognetta knows from his experience at the Union that the annual reports will support his claim that enrolling the non-liquor workers was profitable for the Union. As with the Board minutes, the annual reports will also indicate the funds' various gains and/or losses from year to year. Furthermore, a comparison of the annual reports predating Mr. Cognetta's administration of the funds to the annual reports from Mr. Cognetta's time as trustee and as Secretary Treasurer will demonstrate what impact Mr. Cognetta had on the Major Medical Plan.

We would never claim that the three sets of documents—the Annual Reports, the minutes for the Board of Trustees meetings, and the Contracts between the non-liquor workers and the Union—somehow negate Mr. Cognetta's wrongdoing.

But the documents <u>are</u> relevant under § 3553(a) as they will help to fill in gaps that might otherwise be left in presenting the nature and circumstances of his offense.

### III. Specificity.

We discussed *supra* the specific information sought by the subpoena and why (i.e. the contracts with the non-liquor workers will show their approval by the Union's president; the minutes from the Board meetings will reflect the approval by the Board of Trustees, and the Annual Reports will verify how the Major Medical Plan fared through the years).

Given how non-liquor workers have been enrolled in the Union and the Union's Major Medical Plan for years, even prior to Mr. Cognetta's involvement, we respectfully submit that the Rider to the subpoena is sufficiently specific.

RUBINSTEIN & COROZZO, LLP

## IV. The Documents Are Not Otherwise Procurable by the Exercise of Due Diligence.

*Nixon*'s next prong, and the next issue raised by the Union, is whether the documents "are not otherwise procurable… by exercise of due diligence," *Nix*, 251 F. Supp. 3d at 563 (quoting *Nixon*, 518 U.S. at 699).

To the best of our knowledge, only the Union (and potentially the non-liquor workers) would have the executed Contracts demanded by the subpoena. We thus do not see how we can obtain the Contracts absent a subpoena. Similarly, we are at a loss as to how we could obtain the minutes from the meetings of the Board of Trustees if not through the Union. As far as we are aware, these documents are not publicly available. If they could have been obtained without a subpoena by virtue of the exercise of due diligence, we would have been happy to obtain them elsewhere and avoid litigating the issue.

(Counsel for the Union has advised the defense that, i.e., the minutes and/or the Annual reports may be in the possession of the Major Medical Plan rather than of the Union itself. Interestingly, this is not raised as an objection in the Motion to Quash. Rather, the Motion to Quash seeks to quash *any* subpoena directed either to "MMP and/or Local 1-D." Motion p. 5. To the extent, if any, that the subpoena may have been directed to the wrong entity or may have erroneously listed the wrong entity within the Rider, the defense will agree to have the subpoena modified accordingly or, if appropriate, to have the document requests split into two separate subpoenas.)

## V. The Subpoena Was Issued In Good Faith and Not As A "Fishing Expedition."

This is not a fishing expedition. Mr. Cognetta knows from his time employed at the Union that the Contracts at issue will show that they were approved by the Union President. He knows from having been present at Board meetings that there are minutes that will reflect that he was praised for his handling of the Union's funds and his having increased the ranks of the Union. He knows from his work at the Union that, in spite of his malfeasance and in spite of the evidence of loss, the annual reports will show the medical plan investments were nevertheless sound investments.

Therefore, as discussed above, the documents to be subpoenaed are admissible at Mr. Cognetta's sentencing; they are relevant to the § 3553(a) analysis for his sentencing; they cannot otherwise be procured through due diligence; and they are not sought as part of a fishing expedition. We have also specified *supra* the information sought from each set of documents. We turn, last, to the face of Rule 17(c).

## VI. Compliance would Not be Unreasonable or Oppressive.

Finally, we note that, though the Union complains that the subpoena seeks "reams" or "heaps" of information, Motion to Quash, p. 4, the Union never asserts that compliance would be unreasonable or oppressive. Rule 17(c). The Union's Motion to Quash is limited to the following issues: (1) that it has not been reviewed by the Court; (2) relevancy; (3) specificity and (4) due diligence. We have addressed all of these issues *supra*.

Compliance with the subpoena would not pose a hardship to the Union. All of the requested documents—the annual reports, the minutes, and the Contracts—are readily available to the Union at their office.

## CONCLUSION

The Union's first complaint in the Motion to Quash is that the subpoena has not undergone judicial review. The Union's Motion to Quash—and our cross-motion that the subpoena be so-ordered—renders this something of a moot point as the Court must now rule on the validity of the subpoena. But courts within this Circuit have found, and we maintain, that subpoenas can be issued under Rule 17(c) post-conviction. Given that the vast bulk of the criminal cases in the Southern and Eastern Districts of New York end in guilty pleas, and given the liberty interests at stake in sentencing hearings, requiring parties to file a motion anytime one seeks to subpoena documents or witnesses for a sentencing would waste judicial resources and create an unnecessary obstacle to be overcome in order to adequately prepare for sentencing.

Moreover, challenging Rule 17(c)'s applicability to post-plea subpoenas makes even less sense when such subpoenas would be analyzed under the exact same principles as pre-plea subpoenas.

The documents to be subpoenaed are relevant to Mr. Cognetta's sentencing. In addition to the documents being relevant to the question of restitution, they will help the defense to present to the Court a complete picture of the nature and circumstances of Mr. Cognetta's offense—a necessary part of the § 3553(a) analysis. We need not analyze whether the documents would be admissible at trial pursuant to the Federal Rules of Evidence. The documents are being subpoenaed for his sentencing, at which the Federal Rules of Evidence do not apply.

This is not a fishing expedition. Mr. Cognetta's offense occurred during his employment at the Union. It is by virtue of his employment at the Union that he knows that the documents include what he seeks.

The Contracts and the minutes of the Board meetings, at least, are not otherwise procurable through due diligence. These are not publicly available documents. Defense counsel cannot pull them up online or file a FOIA request or go to an agency to inspect them. They can only be obtained via subpoena.

Finally, we respectfully submit that the Rider to the subpoena is sufficiently specific as to what documents are being subpoenaed.

WHEREFORE, Mr. Cognetta requests an order:

(1) Denying the Motion to Quash and

(2) So-ordering the subpoena *duces tecum* or

RUBINSTEIN & COROZZO, LLP

(3) In the alternative, if the Court finds that modifications are necessary, permitting defense counsel to present modified subpoena(s) to the Court to be so-ordered and

(4) For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*Joseph R. Corozzo*
Rubinstein & Corozzo, LLP
*Attorneys for Defendant*
*Frank Cognetta*

cc:   J. Warren Mangan, Esq. (via ECF)
      AUSA Jason Swergold (via ECF)